UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------x
MICHAEL McCAFFERTY

                    Plaintiff,      <u>MEMORANDUM AND ORDER</u>

        - against -                 Civil Action No.
                                    CV-03-5359 (DGT)
NEW YORK STATE UNIFIED COURT
SYSTEM
                    Defendant.

----------------------------x

TRAGER, District Judge:

        Plaintiff Michael McCafferty ("plaintiff") brings this

employment discrimination case against his current employer, the

New York State Unified Court System ("Unified Court System" or

"defendant"), alleging that he suffered unlawful discrimination

in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII").  Defendant requests summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure.


                         **Background**

        Plaintiff was originally hired by the Unified Court System

in November 1993 as a Senior Court Officer at the Supreme Court,

Kings County, N.Y.  <u>See</u> Compl. ¶ 10.  Plaintiff was promoted to

the title of "Court Officer/Court Attendant" at the Appellate

Division, Second Department, ("Appellate Division") in Brooklyn,

N.Y., in December 2001.  <u>See</u> Compl. at ¶ 11.  Individuals

promoted within the New York State Unified Court system are

subject to a probationary term of 12 to 52 weeks.  N.Y.C.R.R.

tit. 22, ch. I, § 25.22(a)(2) (2005). Appointees to the title of Court Officer/Court Attendant are subject to a 26-week probationary term, upon successful completion of which they are promoted to the rank of Senior Court Attendant. See Def's Statement of Material Facts Pursuant to Rule 56.1 ("Def's 56.1 Stmt.") ¶ 18. Plaintiff was one of three individuals appointed to the rank of Court Officer/Court Attendant in December 2001. Id. at ¶ 19. After these appointments, the Appellate Division's court officer staff was comprised of twelve Court Attendants and Senior Court Attendants - eight Caucasians (including plaintiff), three African-Americans and one Hispanic. Id. at ¶ 20. Plaintiff's immediate supervisor, Chief of Security David Williams ("Chief Williams") is African-American. Id. at ¶ 21. All of plaintiff's other direct supervisors are Caucasian. Id.

A series of incidents punctuated plaintiff's tenure at the Appellate Division, starting soon after his appointment. In late December 2001, there was a meeting of the security staff at the Appellate Department. In attendance were plaintiff and all other Court Attendants and Senior Court Attendants; James Pelzer, Clerk of the Court; Robert Falk, Executive Assistant; and the Hon. Lawrence Bracken, then-Presiding Justice of the Appellate Division. See id. at ¶ 22. The purpose of the meeting was to discuss the need for security staff to work weekend shifts. Id. Plaintiff became agitated during the meeting, yelling and raising

2

his voice, gesticulating wildly and turning red.  Id.
Plaintiff's supervisors considered his behavior "inappropriate
and disrespectful."  Id. at ¶ 25.  There is some dispute as to
whether plaintiff's superiors discussed the incident with
plaintiff.  Defendant asserts that Pelzer and Falk met with
plaintiff to discuss the incident.  Id. at 26; see also Def's Ex.
C 57; Aff. of James Pelzer ("Pelzer Aff.") ¶ 9.  Plaintiff
contends that none of his superiors discussed the incident with
him, except for Justice Bracken, who "graciously reassured [him]
that the weekend work would be temporary."  See Aff. of Michael
McCafferty ("McCafferty Aff.") ¶ 3.

In January 2002, plaintiff was assigned to work the
magnetometers at the courthouse entrance along with fellow Court
Attendant Brenda Nagy on a day when the courthouse had more
visitors than usual because candidates for admission to the Bar
were being sworn in, a ceremony attended by the candidates'
families and other guests.  See Def's 56.1 Stmt. ¶¶ 27-28.  As
members of the public were entering the courthouse, plaintiff
became agitated and loudly berated Nagy because of confusion
regarding their work assignments.  Id. at ¶ 28; Def.'s Ex. N.
Again, there is a dispute about whether plaintiff was reprimanded
after this incident.  Defendant claims that Chief Williams told
plaintiff not to yell at coworkers in public, and to bring any
work-related disagreements to Chief Williams' attention.  See

3

Def's 56.1 Stmt. ¶ 29; see also Def's Ex. B at 44-45; Aff. of David Willams ("Williams Aff.") ¶ 14. Plaintiff states that no one spoke to him about the incident. McCafferty Aff. ¶ 4.

In February 2002, plaintiff was assigned to the chambers of Associate Justice Nancy Smith. See Def's 56.1 Stmt. ¶ 30. On two occasions, Justice Smith asked McCafferty to ship court material from her chambers in Brooklyn to her chambers in Rochester, N.Y., but the material did not reach her Rochester chambers. Id. Justice Smith requested a third time that plaintiff ship certain materials; McCafferty replied that he would take care of the request later, but Justice Smith pressed him to do it immediately so the task was not forgotten. Id. McCafferty acquiesced, but Justice Smith reported a change in his attitude after the incident, saying that the plaintiff refrained from talking to the Justice and instead dealt with her secretary. Id. Justice Smith complained to Chief Williams about McCafferty, and Williams spoke to the plaintiff about her complaint and told him that a major component of his job was "to take care of the judges" and that he should "check his attitude at the door." Id. at ¶¶ 32-33; see also Aff. of David Williams ("Williams Aff.") ¶¶ 6-7.

In March 2002, after these three incidents, plaintiff was given the special assignment of acting as personal driver to the Presiding Justice while her regular driver was on vacation. See

Aff. of Michael McCafferty ("McCafferty Aff.") ¶ 6.

Plaintiff's claims of discrimination are predicated, in part, on disputes about time off. In January 2002, plaintiff was denied permission to take a weekend off. See Def's 56.1 Stmt. ¶ 35. That same weekend, an African-American Senior Court Attendant, Valerie Smith, was permitted to switch shifts in order to have the weekend off. Id. Smith had informed the court of a family emergency (her 11-year-old son had run away from home the previous weekend and she was afraid he would attempt to run away again if left unsupervised). Id. at ¶ 37. Plaintiff complained verbally to Clerk of the Court Pelzer that Chief Williams was giving favorable treatment to Smith. Id. at ¶ 35.

In May 2002, plaintiff's request to take off Monday, May 13, was denied by Chief Williams because McCafferty had already been given several Mondays and Fridays off and "long weekends" are discouraged when court is in session. Id. at ¶¶ 41, 43-44. On the morning of May 13, Senior Court Attendant Mark Ferguson, an African-American, called the court and requested the day off because he was in Albany, N.Y., following the death of his father-in-law. Id. at ¶¶ 47, 49. When Ferguson's request was granted, plaintiff again complained verbally to Clerk of the Court Pelzer, alleging racial discrimination. Id. at ¶ 48. All Court Attendants, regardless of race, have been required to work weekends, and all have been denied leave requests. Id. at ¶¶ 38,

5

45.

On May 16, 2002, plaintiff submitted a formal written complaint to Pelzer, alleging racial and religious discrimination (McCafferty is Jewish) and citing Chief Williams' denial of his leave requests and the granting of leave to two African-American Senior Court Attendants. Id. at ¶ 52; Def's Ex. Y. McCafferty reiterated his complaints in writing on May 20, 2002. See Def's 56.1 Stmt. ¶ 52; see also Def's Ex. AA. Pelzer contacted Kay-Ann Porter of the Unified Court System's Inspector General's office for Bias Complaints, and informed McCafferty via written memorandum that his discrimination complaints were under investigation. See Def's 56.1 Stmt. ¶¶ 53-54. McCafferty claims that Chief Williams reacted with hostility and ridicule after plaintiff's complaints, telling McCafferty that everything would be handled "by the book" and laughing at plaintiff's request for leave. See Pl's Mem. of Law in Opp'n to Def's Mot. for Summ. J. ("Pl's Opp. Mem.") 4; see also McCafferty Aff. ¶¶ 9, 11.

On the same day that plaintiff submitted his first written complaint – May 16th – he also submitted a written request that his probationary term conclude and that he be promoted to Senior Court Attendant. See Def's 56.1 Stmt. ¶ 55. Plaintiff's probationary period was set to expire on June 5, 2002. Id. at ¶ 56. At that time, the Unified Court System had the option of extending his probationary term or terminating his employment

with the Appellate Division; if no action is taken, the probationary period is considered finished and the employee is promoted. N.Y.C.R.R. tit. 22, ch. 1, § 25.22(a)(5)(ii) (2005).

In mid-May 2002, after receiving both written complaints from McCafferty, Clerk of the Court Pelzer, Executive Assistant Falk, Chief Williams and Joseph Amandola, security supervisor, met to discuss the impending end of plaintiff's probationary period and to reach a decision on his continued employment with the Appellate Division. <u>See</u> Def's 56.1 Stmt. ¶ 58. It was the consensus of those at the meeting that plaintiff not be promoted to Senior Court Attendant. <u>Id.</u> at ¶¶ 59. Pelzer and Falk then met with Presiding Justice A. Gail Prudenti and presented their recommendation. <u>Id.</u> at ¶ 60. Justice Prudenti terminated plaintiff's probationary term on May 21, 2002, and he returned to his position at the Supreme Court for Kings County, N.Y. <u>Id.</u> at ¶¶ 61-63. The two Court Attendants hired at the same time as McCafferty, Luis Lopez (Hispanic) and Brenda Nagy (Caucasian), were promoted to Senior Court Attendant at the close of their probationary period. <u>Id.</u> at ¶ 64.

In July 2002, plaintiff filed a complaint with the United States Equal Opportunity Employment Commission ("EEOC") alleging that the Unified Court System engaged in discriminatory behavior in denying his leave requests and that his termination by the defendant was in retaliation for his complaints. <u>Id.</u> at ¶ 71;

Def's Ex. FF.  Defendant filed a response with the EEOC denying plaintiff's allegations.  See Def's 56.1 Stmt. ¶ 72.  The EEOC determined that there was insufficient evidence to support plaintiff's claim of discrimination related to the leave requests, but determined that plaintiff's termination was retaliatory.  Id. at ¶  73; Def's Ex. HH.

**Discussion**

**(1)**

**Racial Discrimination**

Analysis of a Title VII claim begins with the burden-shifting test laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas test, a plaintiff has the initial burden to establish a prima facie case of discrimination.  Id. at 802.  In order to establish a prima facie case, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action "occurred under circumstances giving rise giving rise to an inference of discrimination on the basis of plaintiff's membership in [the protected] class."  Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001).  If plaintiff meets this burden, it is incumbent on the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.

McDonnell Douglas, 411 U.S. at 802.  Should the defendant offer
such a reason, the plaintiff must then demonstrate that the
reason given is actually a pretext for unlawful discrimination.
Id. at 803.  Defendant primarily disputes that plaintiff has met
its initial burden of offering evidence that gives rise to an
inference of discrimination.

Plaintiff claims that he was discriminated against in
scheduling and leave decisions.  See Compl. ¶¶ 14-15.  Plaintiff
asserts that by denying his request for time off, but granting
time off to African-American employees, defendant engaged in
discrimination in violation of Title VII.  Id.  Defendant focuses
its attack on whether plaintiff has made out the fourth element
of a prima facie case of discrimination (that any adverse
employment action occurred under circumstances giving rise to an
inference of discrimination), but plaintiff's case also suffers
from a failure to establish the third element (an adverse
employment action).  Disputes over scheduling that were resolved
against plaintiff simply do not amount to an adverse employment
action.

An adverse employment action is a "materially adverse change
in the terms and conditions of employment."  Galabya v. New York
City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  A
materially adverse change has been defined as one that is "more
disruptive than a mere inconvenience or an alteration of job

responsibilities." Crady v. Liberty Nat'l Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993). That can include termination, demotion, loss of title, benefits or responsibility or other specific actions unique to a particular situation. Id. The rule allows for some flexibility in determining whether a given action taken by employer is an adverse employment action, but "not everything that makes an employee unhappy is an actionable adverse employment action." Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir. 2002) (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). The scheduling conflicts that were resolved against plaintiff do not constitute an adverse employment action. "Scheduling inconveniences . . . generally do not constitute adverse employment actions as a matter of law." Mark v. Brookdale University Hospital, No. 04 CV 2497 (JBW), 2005 WL 1521185 (E.D.N.Y. June 22, 2005). Therefore, the second element of a prima facie case has not been established.

Even if plaintiff can be said to have suffered an adverse employment action, there is no inference of discrimination that can give rise to a Title VII complaint. Plaintiff asserts that he was treated differently from African-American employees who requested leave at the same time. But plaintiff fails to acknowledge defendant's valid, non-discriminatory reasons for the disparate treatment. In both cases, African-American employees were granted time off to deal with personal emergencies after

plaintiff was denied routine leave requests. Senior Court
Attendant Smith was permitted to switch shifts in order to watch
over her son, who had run away from home the previous weekend.
See Def's 56.1 Stmt. ¶ 37. Senior Court Attendant Ferguson was
granted an extra day off to deal with the death of his father-in-
law that coincided with the long weekend plaintiff coveted. Id.
at ¶¶ 47, 49.

It is also worth noting that plaintiff claims to have never
discussed race with his immediate supervisor, Chief Williams; nor
does he claim to have heard Chief Williams express any racial
animus. Id. at ¶ 51. Additionally, all Court Attendants were
required to work weekend shifts and were denied leave and time-
off requests during plaintiff's tenure. Id. at ¶¶ 38, 45.

Trial courts "must be especially chary in handing out
summary judgment in discrimination cases, because in such cases
the employer's intent is ordinarily at issue." Chertkova v.
Connecticut General Life Insurance Co., 92 F.3d 81, 87 (2d Cir.
1996). However, if "the evidence supporting the non-movant's
case is so scant that a rational jury could not find in its
favor," summary judgment is appropriate. Id. at 86. Plaintiff's
complaints regarding disparate treatment in scheduling decisions
fail to allege an adverse employment action, and plaintiff has
further failed to offer evidence that would support even an

inference of discrimination.[1]  Therefore, plaintiff has failed to

establish a prima facie case of discrimination.  Moreover, even

assuming plaintiff has met the burden to establish a prima facie

case, defendant has asserted undisputed and legitimate reasons

for the allegedly adverse employment action which plaintiff has

not shown to be pretextual.  Accordingly, summary judgment for

defendant is warranted on the racial discrimination claim.


### (2)

### Retaliation

Title VII states that it is unlawful "for an employer to

discriminate against any of his employees ... because [the

employee] has opposed any practice made an unlawful practice by

this subchapter."  42 U.S.C. § 2000e-3(a) (2005).  Failure to

establish that the activity complained of in a discrimination

claim actually violated Title VII does not preclude a court from

holding that a valid retaliation claim exists where the claim was

made in good faith.  See Quinn v. Green Tree Credit Corp., 159

F.3d 759, 769 (2d Cir. 1998).  Retaliation claims are evaluated

by the same burden-shifting rules set forth in McDonnell Douglas.

---

[1] Plaintiff's initial written complaints to his supervisors
alleged religious discrimination.  See Def's 56.1 Stmt. ¶ 52.
But plaintiff's complaint did not include any allegation of
religious discrimination; nor has he alleged any facts that would
give rise to a Title VII religious discrimination claim.

<u>Richardson v. New York State Dep't. of Correctional Serv.</u>, 180
F.3d 426, 443 (2d Cir. 1999).  Plaintiff must first establish a
<u>prima</u> <u>facie</u> case of discrimination that would permit a rational
trier of fact to conclude (1) that the plaintiff engaged in
protected activity in opposition to illegal employment practices;
(2) that the employer was aware of the protected activity;
(3) that the employer took an adverse action against the
employee; and (4) that there is a causal connection between the
protected activity and the adverse action, i.e., that retaliation
was a motive for the adverse action.  <u>Cifra v. General Electric
Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001).  Once the plaintiff
establishes a <u>prima</u> <u>facie</u> case, the defendant can rebut with a
showing that there was a legitimate, non-retaliatory reason for
the adverse employment action; if the defendant meets that
burden, the plaintiff must offer evidence that would permit the
reasonable trier of fact to conclude that the employer's
justification is a pretext for retaliation.  <u>Id.</u>

### a. Plaintiff's <u>prima</u> <u>facie</u> case of retaliation

Plaintiff asserts that the Unified Court System retaliated
against him for filing a discrimination complaint by refusing to
promote him to Senior Court Attendant and dismissing him from his
position at the Appellate Division.  The first three elements of
a <u>prima</u> <u>facie</u> retaliation claim are satisfied.  Plaintiff engaged

13

in a protected activity (i.e., filing formal written complaints),
defendant was aware of his activity and defendant took an adverse
action (i.e., plaintiff's dismissal).  Plaintiff relies upon
temporal proximity to establish the causation element.
Causal connection "can be established indirectly by showing that
the protected activity was closely followed in time by the
adverse action." Cifra, 252 F.3d at 217 (quoting Reed v. A.W.
Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).  Plaintiff
filed a formal written complaint on May 16, 2002.  See Def's 56.1
Stmt. ¶ 52.  That same day, he submitted a written request that
he be promoted to Senior Court Attendant upon the impending
conclusion of his probationary term.  Id. at ¶ 55.  On May 21,
2002, plaintiff filed a follow-up complaint.  Id. at ¶ 52.  The
same day his second complaint was filed, after a series of
meetings at which plaintiff's supervisors recommended termination
to Presiding Justice Prudenti, the Appellate Division terminated
plaintiff's employment.  Id. at ¶¶ 58-62.

       The five-day gap between plaintiff's initial complaint and
his termination is enough to establish temporal proximity.  See
Cifra, 252 F.3d at 217 (finding temporal proximity where a gap of
less than three weeks passed between the employer's learning of
plaintiff's protected activity and termination); Quinn, 159 F.3d
at 769 (determining that a two-month gap between the initial
complaint and the adverse employment action established

causation).  But temporal proximity alone is not sufficient to
establish causation where other factors would prevent a
reasonable trier of fact from reaching an inference that the
adverse job action was in retaliation for protected activity.
See Slattery v. Swiss Reinsurance Corp., 248 F.3d 87, 95 (2d
Cir.), cert. denied, 534 U.S. 951 (2001) (holding that previous
adverse job actions, some preceding employee's protected
activity, amounted to "an extensive period of progressive
discipline" sufficient to destroy the inference of retaliation);
Hines v. Hillside Children's Center, Inc., 73 F. Supp. 2d 308,
323 (W.D.N.Y. 1999) (finding that the timing of a promotion
decision was dictated by the opening of a supervisory position
when the former office-holder was fired, so the failed
applicant's complaint about the former office-holder's
termination was necessarily close in time to the promotion
decision and therefore did not create an inference that the
proffered reasons for the promotion decision were pretextual).
See also Quiroga v. Hasbro, Inc., 934 F.2d 497, 501-02 (3d Cir.
1991).

     Here, defendant can offer two indisputable justifications
for the timing of plaintiff's termination.  First, the Unified
Court System was required by statute to reach a decision on
plaintiff's status within three weeks of his complaint.  Failure
by defendant to take action prior to the end of plaintiff's

probationary term on June 5, 2002, would result in his appointment automatically becoming permanent. N.Y.C.R.R. tit. 22, ch. I, § 25.22(a)(5)(i). The statute also provided that defendant could terminate plaintiff before the end of the probationary term. N.Y.C.R.R. tit. 22, ch. I, § 25.22(a)(5)(ii). The timing of plaintiff's dismissal was, therefore, mandated by law.[2]

Second, plaintiff himself requested that a decision regarding his promotion be made. See Def's 56.1 Stmt. ¶ 55. It would be anomalous to hold that the defendant could meet plaintiff's request for an employment decision, then have its timing act as the basis for an inference that it was retaliating against the plaintiff. Such an outcome would allow plaintiff to force a favorable employment decision by virtue of the timing of his complaint.

Analysis of the causation element in this case includes discussion of the defendant's justifications for plaintiff's dismissal. However, analysis of Title VII claim need not proceed in a linear fashion, as the stages of the burden-shifting scheme

---

[2] The governing statute also allows for extension of the probationary term if the employee is placed in a "different assignment." N.Y.C.R.R. tit. 22, ch. I, § 25.22(a)(5)(ii). Defendant asserts that such an arrangement would be infeasible in an environment as small as the Appellate Division, and also offers evidence that it has never been done. See Def's Reply Mem. of Law in Support of Mot. for Summ. J. ("Def's Reply Mem.") 9. Plaintiff does not contest this.

sometimes overlap.  <u>Meiri</u>, 759 F.2d at 997 n.12 ("Although courts have fashioned a tripartite construct to evaluate Title VII claims, we must withstand the temptation to treat each stage as an independent inquiry.").  The strength or weakness of the inference of discrimination raised by plaintiff's <u>prima</u> <u>facie</u> case "defines the nature of the employe[r]'s rebuttal."  <u>Id.</u> at 997.  Plaintiff asserted a weak <u>prima</u> <u>facie</u> case based only on temporal proximity, and a review of the circumstances surrounding the terms of employment as established by statute and plaintiff's actions (i.e., requesting a decision regarding his probationary status) destroys any inference of retaliation.

Therefore, because plaintiff has failed to establish a causal connection between his termination and his complaints, plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of retaliation.

### b.  Defendant's non-retaliatory reason for plaintiff's termination

Even if plaintiff had established a <u>prima</u> <u>facie</u> case of retaliation, defendant offers a non-retaliatory justification for the decision to terminate plaintiff.  Doing so satisfies defendant's <u>McDonnell Douglas</u> burden-shifting responsibility and shifts the burden back to the plaintiff to prove that the proffered reasons are a pretext.  <u>Cifra</u>, 252 F.3d at 216.

A motion for summary judgment is properly supported when an

17

employer can show "numerous undisputed examples of inappropriate behavior." <u>Meiri</u>, 759 F.2d at 998. In <u>Meiri</u>, there were several documented incidents of inappropriate behavior during the plaintiff's probationary period that led to a decision to terminate employment. <u>Id.</u> at 992-93. The Second Circuit held that those incidents were sufficient to defeat claims of pretext and to support a grant of summary judgment. <u>Id.</u> at 998.

As in <u>Meiri</u>, plaintiff engaged in behavior that defendant reasonably found unsuitable for a Court Attendant. In December 2001, plaintiff became angry and excited at a meeting of security and court personnel that included the presiding justice of the Appellate Division. Def's 56.1 Stmt. ¶¶ 22-26. Approximately a month later, plaintiff berated a coworker in front of members of the public. <u>Id.</u> at ¶¶ 27-29. Finally, in February 2002 plaintiff had a disagreement with Justice Smith about how to handle certain tasks. Justice Smith later reported a change in plaintiff's attitude, and relayed her concerns to his superiors. <u>Id.</u> at ¶¶ 30-33.

The essential facts of these incidents are not in dispute. Plaintiff disputes that his supervisors discussed the first two incidents with him or expressed dissatisfaction with his actions. <u>See</u> Plaintiff's Counterstatement Pursuant to Rule 56.1 ("Pl's 56.1 Stmt.") ¶¶ 26, 29. Whether plaintiff was reprimanded is irrelevant. It is undisputed that plaintiff's supervisors found

his behavior inappropriate.[3]  <u>See</u> Def's 56.1 Stmt. ¶¶ 25, 29, 58-59.  Therefore, defendant can offer plaintiff's work performance as a valid, non-pretextual justification for his dismissal.

Plaintiff offers no evidence that defendant's stated reasons for dismissal were pretextual.  There is no indication that any non-white employees who acted similarly to the plaintiff were retained.  <u>See</u> <u>Meiri</u>, 759 F.2d at 998.  Plaintiff asserts that his immediate supervisor, Chief Williams, reacted angrily upon learning of the initial filing of plaintiff's written complaints.  <u>See</u> Pl's Opp. Mem. 4.  However, Chief Williams was not involved in the ultimate decision to terminate plaintiff.  Additionally, the negative assessment of plaintiff's probationary performance was shared by all of plaintiff's supervisors.  <u>See</u> Def's 56.1 Stmt. ¶ 59.

Although summary judgment is rarely granted when an employer's state of mind is at issue, where scant evidence can be offered of discriminatory or retaliatory intent, failure to grant summary judgment would defeat the rule's purpose of "avoiding protracted, expensive and harassing trials."  <u>Meiri</u>, 759 F.2d at 998.  "To allow a party to defeat a motion for summary judgment

---

[3] Plaintiff asserts that he was given a "special assignment" when he was selected as the driver for President Justice Prudenti when her regular driver was on vacation.  <u>See</u> McCafferty Aff. ¶ 6.  But the assignment simply required a temporary driver who lived in Brooklyn, and the other Brooklyn-based court attendants showed no interest in the assignment.  <u>See</u> Def's Ex. E 32; Def's Ex. G 20.

by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." <u>Id.</u>  Given the legitimate reasons for dismissal and plaintiff's inability to offer evidence that would allow a reasonable fact-finder to conclude that defendant's actions were retaliatory, summary judgment on the retaliation claim is appropriate.

## Conclusion

Because there is no evidence of an adverse employment action or facts that would establish an inference of discrimination, plaintiff has failed to establish a <u>prima</u> <u>facie</u> Title VII case. Additionally, because plaintiff has failed to establish a causal linkage between his complaints and the termination of his employment at the Appellate Division and did not offer evidence showing defendant's stated reasons for his dismissal was pretextual, there is no valid Title VII retaliation claim. Therefore defendant's motion for summary judgment is granted, and plaintiff's claims are dismissed with prejudice.  The Clerk of the Court is directed to close the case.


Dated:    Brooklyn, New York
          November 2, 2005


                              SO ORDERED:


                              ____/s/_____
                              David G. Trager
                              United States District Judge

21